Date Signed:
December 5, 2013



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 11-02960 |
| | Chapter 7 |
| THOMAS JAY EVANS, | |
| Debtor. | |
| _____ | |
| | Adv. Pro. No. 12-90062 |
| THOMAS JAY EVANS, | |
| Plaintiff, | |
| vs. | |
| UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendant. | |
| _____ | |

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

The plaintiff in this adversary proceeding, Thomas Jay Evans, seeks to discharge student loans which he owes to defendant United States Department of Education ("DOE"). DOE filed a motion for summary judgment. At the hearing

on the motion on March 8, 2013, the parties agreed to mediate, so I took the matter under advisement and withheld decision pending the outcome of the mediation. On November 13, 2013, the volunteer mediator reported that the parties did not fully resolve their differences and returned the matter to the court for disposition.

**FACTS**

Mr. Evans is sixty five years old. He is single and has no dependents. He holds college and doctoral degrees in clinical psychology. He financed his higher education with about $150,000 of student loans. Declaration of Thomas Jay Evans, filed in Bk. No. 11-02960 as Dkt. 20 on March 30, 2012 ("Evans Dec."), at 5.[1]

In 1996, Mr. Evans received a Federal Direct Consolidation Loan from DOE to consolidate his federal student loans. Mr. Evans has paid a total of $422.70 towards the loan. He has made no payment since 2001. Dkt. 13-8 at 2, 4. Mr. Evans owes DOE more than $450,000 at this time. Dkt. 13-2 at 18.

From 1997 to the present, Mr. Evans has held a series of full time jobs in the field of psychology. Evans Dec. at 6. He attempted diligently to obtain jobs that

---

[1] Mr. Evans filed the Evans Dec. in his main bankruptcy case in response to the U.S. Trustee's motion to dismiss his bankruptcy case. Mr. Evans referred to it in his response to DOE's motion for summary judgment. Dkt. 15 at 2. He did not formally make a copy of it part of the record in this adversary proceeding, but I will rely on it because the DOE did not object to his references to it.

2

would maximize his income (including jobs in underserved areas that would have given him credit against his student loan debt), and also obtained post-doctoral training that he hoped would increase his earning potential. Id. at 6-10. Until 2008, however, his annual income never exceeded about $45,000, and during most of those years was substantially less. Id. at 12-13, Dkt. 15-4 at 12-14. He has always been fully employed and has maximized his income to the extent feasible.

In 2001, Mr. Evans attempted to negotiate a payment plan with DOE. He wanted to pay $50.00 per month towards his student loans. (At that point, he owed DOE about $245,000.) DOE told him that it

> can offer alternative arrangements, including the option to establish a monthly repayment plan that is both reasonable and affordable. This means that while bearing a reasonable relation to the size of the debt, the monthly installments nevertheless comport with the debtor's approved ability to pay.

Dkt. 13-9 at 3. DOE told Mr. Evans that, in order to evaluate a payment plan, Mr. Evans would have to provide documentary evidence of the amount and reasonableness of his income and expenses by providing, among other documents, tax returns. Mr. Evans concluded, based on DOE's letters, telephone conversations with DOE representatives, and his own research into DOE's policies, that DOE would insist on monthly payments of at least one percent of his loan balance. Since he could not afford nearly that much, he did not provide the

3

requested documents and abandoned his attempt to negotiate a payment plan. He made this decision in good faith.

In 2008, Mr. Evans obtained a new job with the Department of Veterans Affairs in Maui. His annual income jumped to almost $80,000 during that year. Id. at 13.

In 2010, Mr. Evans again contacted DOE about a repayment plan. By this point, his loan balance exceeded $450,000. DOE sent him several rather long-winded and somewhat confusing letters explaining his options. In summary, DOE offered him three choices. First, he could "rehabilitate" his loan by making nine timely monthly payments of $4,517.00 each. This option had certain advantages: the loan would no longer be in default status and DOE would so inform credit reporting bureaus; and he could employ certain additional repayment options, such as the Income Based Repayment and Income Contingent Repayment plans, that are not available to borrowers whose loans are in default. Second, he could become eligible for a "Balance Sensitive Rehabilitation" option by paying $2,796.88 per month. Third, he could "seek[] additional financial relief by making

4

payments that are reasonable and affordable." In order to pursue this option, Mr. Evans had to provide a Statement of Financial Status form and supporting documentation. DOE would then use that information to determine Mr. Evans' payment amount. Dkt. 13-12 at 3.

Mr. Evans reasonably decided that he could not afford either of the first two options. He concluded that the monthly payment which DOE would offer under the third option would be at least 0.75% of his loan balance, or about $3,400 per month. He reached this conclusion based on DOE's letters to him, his telephone conversations with DOE representatives, and his own research into DOE's regulations and policies.

The letters he received from DOE do not say that a "reasonable and affordable" payment had to equal any particular percentage of the loan balance. They do say that, in order to "rehabilitate" the loan, his payments had to be at least one percent of the loan balance. The letters are somewhat confusing and Mr. Evans could easily have misunderstood them. Further, during 2010, DOE apparently considered the loan balance when evaluating the "reasonableness and affordability" of a payment plan. Dkt. 15-3 at 8.

DOE's representatives also told Mr. Evans that any repayment plan would have a twenty five year term. Evans Dec. at 10.

U.S. Bankruptcy Court - Hawaii   #12-90062   Dkt # 39   Filed 12/05/13   Page 5 of 15

Mr. Evans decided not to pursue a "reasonable and affordable" payment plan because (1) he probably could not have afforded the payments, (2) the plan would have required him to make payments until he was eighty eight years old, and (3) when the remaining debt was forgiven at the end of the twenty five year period, he would have faced a very large income tax liability on the cancellation of debt income. He concluded that his attempt to negotiate a payment plan was futile, and he abandoned the effort. Evans Dec. at 4, 10-11. He made this decision in good faith.

The record does not consistently describe Mr. Evans' current income. According to schedule I (dkt. 13-2 at 22), his gross monthly income is $8,514.32, his payroll deductions are $2,066.20 (including a small retirement contribution), and his other income (a small VA disability payment) is $123.00, yielding monthly take-home income of $6,571.20. According to form B-22 (dkt. 13-2 at 42), his current monthly income (including his VA disability income) is $9,346.85 and his taxes are $2,007.56, yielding take-home income of $7,339.29. According to his paystubs for the last few pay periods of 2011 (dkt. 13-3), his biweekly gross salary is $3,660.00 and his payroll deductions (excluding a tax levy described below) are $1,033.07, yielding take-home pay of $2,626.93 per biweekly pay period, which amounts to $68,300.18 per year or $5,691.68 per calendar month.

6

U.S. Bankruptcy Court - Hawaii   #12-90062   Dkt # 39   Filed  12/05/13   Page 6 of 15

Mr. Evans' salary is subject to a continuing levy of about $800 per month on account of unpaid federal taxes totaling about $30,000. Dkt. 13-3 at 5-6.

Mr. Evans' monthly expenses are $4,835.10. DOE does not challenge the reasonableness of any of these expenses.

Thus, depending on which income figure one chooses, Mr. Evans has surplus income of $1,704.19 to $56.58 per month which he could use to pay his student loans.

There is very little chance that Mr. Evans' surplus income will increase, and a near certainty that his surplus income will decrease, in the foreseeable future. His current job is the best he has ever held and it is highly unlikely that he will ever find a better one. He is sixty five years old and will probably retire in the next few years. Further, Mr. Evans suffers from hepatitis C, an incurable chronic disease which is likely to worsen with time. His disease may reduce his earning capacity, although the timing and severity of the reduction are unknown. Dkt. 15-4 at 10.

Mr. Evans has very few assets. He has no real property, virtually no savings, modest personal possessions, and a very small pension entitlement. He owes more than $30,000 of federal and state taxes. His other debts have been discharged.

U.S. Bankruptcy Court - Hawaii   #12-90062   Dkt # 39   Filed 12/05/13   Page 7 of 15

Mr. Evans filed a chapter 7 bankruptcy petition on November 11, 2011. He commenced this adversary proceeding on July 6, 2012, seeking a determination that his debts to DOE are dischargeable. He received a discharge of all of his dischargeable debts on November 1, 2012.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), Fed. R. Bankr. P. 7056; see also Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). After notice and an opportunity to respond, the court may grant summary judgment in favor of the nonmoving party. Fed. R. Civ. P. 56(f)(1). In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997). In making this determination, the court views the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party. McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

8

## DISCUSSION

### *Jurisdiction*

The court has jurisdiction of the subject matter and personal jurisdiction over DOE. This is a core proceeding. The court has both statutory and constitutional authority to enter a final judgment.

### *Section 523(a)(8) and the Brunner Test*

Section 523(a)(8) provides that:

> A discharge [in a chapter 7 case] . . . does not discharge an individual debtor from any debt –
>
> (8) unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents, for --
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) for an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . . .

11 U.S.C. § 523(a)(8).

Mr. Evans' debt to DOE is of the kind which section 523(a)(8) generally

9

U.S. Bankruptcy Court - Hawaii   #12-90062   Dkt # 39   Filed  12/05/13   Page 9 of 15

excepts from the discharge.

In order to establish undue hardship under section 523(a)(8), the debtor bears the burden of proving that: (a) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for the debtor and the debtor's dependents if forced to repay the loans; (b) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (c) the debtor has made good faith efforts to repay the loans. Hedlund v. Educ. Res. Inst. Inc., 718 F.3d 848, 850, 851 (9th Cir. 2013); In re Mason (Educ. Credit Mgmt. Corp. v. Mason), 464 F.3d 878 (9th Cir. 2006); In re Pena, 155 F.3d 1108, 1112 (9th Cir. 1998), citing In re Brunner, 831 F.2d 395 (2d Cir. 1987). The debtor's burden is stringent. The debtor must show more than merely tight finances and more than garden-variety hardship.

The court can discharge a student loan obligation in part, so long as the debtor carries the burden of proving that payment of the discharged part would impose an undue hardship. In re Saxman 325 F.3d 1168 (9th Cir. 2003).

### *Ability to Pay*

The first prong of the Brunner test requires the debtor to show that, based on the debtor's current income and expenses, the debtor cannot maintain a minimal

standard of living if required to pay the student loan debts.

Mr. Evans could not possibly repay his entire student loan debt during his lifetime. His surplus income probably would not even cover the interest that accrues on his $450,000 debt.

But Mr. Evans could pay a portion of the debt while maintaining a minimal standard of living. The record makes it clear that his income exceeds his reasonable expenses, although the exact amount of his surplus income is uncertain.

The other variable is the length of time during which Mr. Evans could continue to make those payments. Mr. Evans would face unreasonable hardship if he were required to make payments for more than five more years. He will be about seventy at the end of that period. That is beyond the usual retirement age, but it is reasonable under all of the circumstances, including (but not limited to) the fact that he has enjoyed a sizable surplus income for about five years yet has made no payments to DOE.

Mr. Evans has satisfied the first prong of the Brunner test, but only in part.

### *Persistence of Financial Hardship*

The second prong of the Brunner test requires the debtor to show "circumstances enabling the court to predict the longevity of the financial hardship, on a case-by-case basis." In re Nys, 308 B. R. 436, 443 (B.A.P. 9th Cir.

2004), aff'd, 446 F.3d 938 (9th Cir. 2006). The court must determine whether the debtor faces any insurmountable barriers to financial recovery, which will prevent the debtor from repaying the student loans for several years. These barriers may include (among others) serious mental or physical disability of the debtor or the debtor's dependents, which prevents employment or advancement; the debtor's obligations to care for dependents; lack of or severely limited education; poor quality of education; lack of usable or marketable job skills; underemployment; maximized income potential in the chosen educational field, and no other more lucrative job skills; limited number of years remaining in work life to allow payment of the loan; age or other factors that prevent retraining or relocation as a means for payment of the loan; lack of assets, whether or not exempt, which could be used to pay the loan; potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; and lack of better financial options elsewhere. Id. at 446-47. The court must also consider the debtor's future prospects for employment. Id. at 444.

Mr. Evans' financial situation is as good as it has ever been and it will almost certainly get worse. His income will surely fall over the next few years as he reaches retirement age. His hepatitis infection may increase the speed and

12

depth of the decline. There is almost no chance that his financial condition will improve. In re Hurley, 258 B.R. 15, 25 (Bankr. D. Mont. 2001) (debtor's health problems plus age of sixty years showed that the second prong of the Brunner test was met). Mr. Evans has satisfied the second prong of the Brunner test.

### *Good Faith*

The third prong of the Brunner test, "good faith," requires examination of the debtor's efforts to repay the loan by maximizing income and minimizing expenses and to negotiate an affordable repayment plan. Pa. Higher Educ. Assistance Agency v. Birrane, 287 B.R. 490, 499 (B.A.P. 9th Cir. 2002).

The debtor's inability to repay the student loans must result from factors beyond the debtor's reasonable control, and not the debtor's own willfulness or negligence. "Declining to obtain additional work is not a factor beyond [the debtor's] reasonable control." Id. at 500.

Mr. Evans is unable to repay his student loans despite the fact that he has maximized his income. His inability to earn more is beyond his reasonable control and not the product of his willfulness or negligence. DOE does not challenge the reasonableness of his expenses.

DOE argues that Mr. Evans' abandonment of loan modification negotiations in 2001 and 2010 proves his lack of good faith.

13

U.S. Bankruptcy Court - Hawaii   #12-90062   Dkt # 39   Filed  12/05/13   Page 13 of 15

His decision in 2001 is understandable. At that point, his income was very modest. The $50 monthly payment he was offering was all he could afford, but it was so small both in absolute terms and in comparison with his loan balance that he reasonably decided that DOE would never accept it.

His decision in 2010 is a closer call. At that point, he was earning a good living in a stable job and could afford a nontrivial payment. He could have continued the discussions with DOE simply by forwarding them the backup information about his finances that DOE had requested. Instead, he opted to terminate the discussions based on his own evaluation of what DOE would probably accept. But DOE has not rebutted Mr. Evans' testimony that DOE representatives told him in telephone conversations that "the only available option was the standard repayment plan requiring a minimum of 1% of the loan balance per month," that "other repayment options were not being approved" by DOE, and that any administrative plan "would require a twenty five year repayment." Evans Dec. at 10. He also realized that, when he finished the payment plan, he would owe a substantial amount of income tax on the cancelled debt. Mr. Evans' decision to forego such a disadvantageous plan was made in good faith. Compare Hedlund v. Educ. Res. Inst. Inc., 718 F.3d 848, 856-57 (9th Cir. 2013); Roth v. Educ. Credit Mgmt. Corp. (In re Roth), 490 B.R. 908, 917-20 (B.A.P. 9th Cir.

U.S. Bankruptcy Court - Hawaii   #12-90062   Dkt # 39   Filed 12/05/13   Page 14 of 15

2013).

## CONCLUSION

Mr. Evans has satisfied the requirements for a partial discharge of his student loan debt. Because the record does not clearly indicate the amount he is currently earning, I cannot decide the exact amount of the debt that should be discharged.

Pursuant to Fed. R. Civ. P. 56(e), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, Mr. Evans is directed to file, not later than December 20, 2013, one or more declarations and supporting evidence showing his current income and payroll deductions. The DOE may respond to Mr. Evans' filing not later than January 10, 2014. Pursuant to rule 56(f), the DOE may also respond (by the same date) to my intention to grant summary judgment (at least in part) in favor of Mr. Evans, a nonmovant.

U.S. Bankruptcy Court - Hawaii   #12-90062   Dkt # 39   Filed   12/05/13   Page 15 of 15